```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

BRENDA DREW,                    :         NO. 1:10-CV-00907
                                :
    Plaintiff,                  :
                                :
  v.                            :         **OPINION AND ORDER**
                                :
QUEST DIAGNOSTICS, INC.,        :
                                :
    Defendant.                  :

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 27), Plaintiffs' Response in Opposition (doc. 33), and Defendants' Reply (doc. 50). The Court held a hearing on Defendant's motion on May 23, 2012. For the reasons indicated herein, the Court DENIES Defendant's motion.

**I. Background**

Plaintiff Brenda Drew is suing her former employer Defendant Quest Diagnostics, Inc., alleging FMLA and ERISA retaliation (doc. 1). Plaintiff had worked for Defendant for nearly fifteen years, most recently as a phlebotomy supervisor (Id.). In Plaintiff's view, her supervisor repeatedly discouraged her from taking leave to have a hysterectomy, and then while she was finally on leave for such surgery, she discovered her fiance and domestic partner Manji Sambi ("Sambi") had cancer (Id.). Plaintiff's theory is that Defendant knew about the health problems, the FMLA leave that would be necessary, the insurance

costs at stake, and therefore fired her while she was on leave (Id.).

Defendant moves for summary judgment based on the fact that it implemented a reduction-in-force ("RIF") after it lost a hospital contract, and twenty-one employees were let go (doc. 27). Defendant contends it applied a neutral RIF procedure that took into account which employees could be let go based on performance evaluations and written disciplinary actions (Id.). Because Plaintiff had two disciplinary actions within the year prior to the RIF, Defendant contends it was required by its procedure to include her in the RIF (Id.).

Plaintiff responds that she was targeted for discipline so that her file could be "papered," as within months after she requested leave for the hysterectomy, her supervisor Donna Bryant issued Plaintiff's first disciplinary warning (doc. 33). Plaintiff contends the fact that Bryant suggested she should borrow a book called No More Hysterectomies, shows Bryant was against her taking leave (Id.). Plaintiff contends Bryant treated her differently than another employee, Dawn McHolland, with whom Plaintiff had conflict (Id.). A few months later, Bryant issued a written warning to Drew regarding scheduling failures, something that Drew contends other employees experienced as well, but without warning (Id.). In September 2008, she received her last written warning, stating that Plaintiff disregarded a recent directive regarding

2

staff placements (Id.). Plaintiff contends she was unaware the directive was still in effect, and she questions whether it was legitimate (Id.).

In December 2008 Jennifer Lamb, senior human resources generalist, and Bryant, informed Plaintiff of her termination, while she was still on FMLA leave (Id.). They also expressed that the termination might be a "blessing in disguise," as Plaintiff would have more time to take care of Sambi, and Plaintiff would not be able to give 100% to her job anyway (Id.).

Plaintiff contends she can establish a prima facie FMLA retaliation case simply because she was on FMLA leave when she was fired (Id.). She also contends the statements relating to her being able to take care of her fiance show direct evidence she was being retaliated against due to FMLA leave (Id.). She further contends she can establish her case by indirect evidence because of the temporal proximity between her termination and her leave, which shows causation (Id.). Plaintiff contends a jury could find the RIF to be pretext, because the underlying disciplinary documents had no valid basis (Id.). Moreover, in her view, each discipline could constitute pretext for retaliation (Id.). Plaintiff contends another similarly-situated employee, Barb Beyersdoerfer, received discipline from Bryant in the relevant time-period of 2008 which was not taken account of in the RIF (Id.) Finally, Plaintiff contends she can establish ERISA retaliation because she was

3

terminated only a few weeks after she learned of Sambi's diagnosis (Id.). In her view, the same reasoning applies in the context of such claim to show that the RIF was pretext, and her ERISA retaliation claim should survive (Id.).

Defendant contends in reply there is no direct evidence of retaliation because the facts show Bryant only learned of Sambi's diagnosis during the conference call in which she and Lamb informed Plaintiff she was being terminated (doc. 50). Defendant contends it is only speculation to contend that because other employees knew about the diagnosis, Bryant must have as well (Id.). Even if Bryant did know, Defendant contends such remarks were ambiguous and cannot constitute direct evidence of animus (Id.).

Defendant further contends that because the Sixth Circuit has adopted the "honest belief" rule, and it is undisputed that it relied on a neutral RIF policy in determining who to let go (Id.). Thus Defendant reasons, when Director Michael Fuller and Jennifer Lamb made the termination decision, they did so based on an honest belief that Plaintiff's disciplinary record qualified her for termination (Id.). Morever, Defendant reasons that the person with alleged FMLA animus, Plaintiff's supervisor Bryant, was not even involved with the RIF process (Id.). Defendant contends it is only speculation to contend that Plaintiff's discipline was linked to FMLA animus because she had never requested leave prior to such discipline, and such discipline was in fact motivated by the

4

Director Fuller, who encouraged Bryant to be tougher on Plaintiff because Plaintiff was a mediocre performer (Id.). Finally, Defendant contends there can be no ERISA violation because Plaintiff could only identify Sambi's life insurance as the benefit she was allegedly deprived, and evidence shows it is still in full force and effect (Id.).

**II. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

5

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary

6

matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted

evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Analysis**

There is no dispute that Plaintiff was on FMLA leave at the time of her termination, and as such, the basic issue as to her retaliation claim is whether a reasonable jury could find a causal connection between her leave and her termination.[1] Plaintiff

---

[1] A Plaintiff can establish a prima facie case for FMLA retaliation by showing 1) she engaged in an activity protected by the FMLA, 2) the employer knew she was exercising FMLA rights, 3) after learning of the employee's exercise of FMLA rights, the employer took an adverse action against the employee, and 4) a causal connection exists between the protected FMLA activity and the adverse employment action. Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006). There is no dispute as to the first three prongs of Plaintiff's case.

8

asserts that she can proffer both direct and circumstantial evidence to show such causal connection. The Court will examine Plaintiff's claims seriatum.

**A. Direct Evidence**

Direct evidence of interference occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 152 (2000), Ross v. Campbell Soup Co., 237 F.3d 701, 707-08 (6th Cir. 2001). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000)(citations omitted), Lautner v. American Tel. and Tel. Co., 1997 U.S. App. LEXIS 1267, No. 95-3756,(6th Cir. Jan. 22, 1997)(Direct evidence is "is evidence which if believed, would prove the existence of a fact . . . without any inferences or presumptions.")

Here, Plaintiff contends Bryant's comments that Plaintiff would not be able to give 100% due to Sambi's diagnosis, and her comments that Plaintiff's termination would allow Plaintiff to attend Sambi's doctor appointments constitute direct evidence of FMLA retaliation. The Court disagrees. Direct evidence requires no inferences, and these comments would require the fact-finder to infer Bryant made such statements while considering

9

future FMLA leave. Such statements could reflect animus, but not necessarily so. The idea that such a diagnosis would be stressful on an employee, and the idea that the employee would need time to take care of her spouse, do not necessarily translate into direct evidence of animus toward FMLA leave.

**B. Indirect Evidence**

The McDonnell Douglas burden shifting analysis applies to Plaintiff's circumstantial evidence theory in support of her FMLA retaliation claim. <u>Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 315-16 (6th Cir. 2001). As such, after Plaintiff establishes her <u>prima</u> <u>facie</u> case, the burden shifts to Defendant to proffer a legitimate nondiscriminatory justification for its action. Then, the burden shifts back to Plaintiff to show Defendant's justification is merely pretext for unlawful retaliation.

At the hearing Defendant reiterated its position that Plaintiff's termination was simply the product of a neutral RIF. Plaintiff, however, contended there is an issue of fact as to whether Bryant acted with discriminatory animus, as evidenced by her requests that Plaintiff delay her leave, her suggestion that Plaintiff read the book <u>No More Hysterectomies</u>, and her issuing of discipline to Plaintiff, who had never been disciplined previously during fourteen years of employment. In Plaintiff's view, although the RIF may have appeared to be neutral, it was in fact tainted by

Bryant's illegitimate discipline of Plaintiff.

Plaintiff relies on Cutcher v. Kmart Corp., 364 Fed. Appx. 183 (6th Cir. 2010), in which the Sixth Circuit reversed a grant of summary judgment as to a claim for FMLA interference. The appellate court found a question of fact for the jury where an evaluation use!d to calculate a RIF score appeared to take into account the plaintiff's leave. 364 Fed. Appx. 189. In such an instance, the court reasoned, a reasonable juror could find that plaintiff's leave was a factor in her termination. Id.

Plaintiff argues the same reasoning applies here, as Bryant's discipline of Plaintiff entered into the RIF, while Bryant's discipline of Beyersdoerfer did not. As such, Plaintiff contends she can show she was treated differently than a similarly-situated employee who did not take FMLA leave. Moreover, Plaintiff argues that Bryant's remarks upon Plaintiff's termination that Plaintiff would not be able to give one hundred percent, could be found by a reasonable jury to show Bryant harboured retaliatory animus toward anticipated future leave. Defendant replied Bryant would have to have been clairvoyant to foresee the RIF when she issued Plaintiff's discipline, because the discipline occurred prior to Defendant's loss of its contract with the Health Alliance. Moreover, Defendant contended Plaintiff fails to account for the fact that Mr. Fuller started as a supervisor in fall 2007 and encouraged Bryant to do a better job disciplining her staff.

11

As a final matter, Plaintiff argued that Defendant failed to comply with its own policies by not offering Plaintiff another open position at the time of the RIF. Defendant replied that Plaintiff had access to the website announcing positions, and simply did not apply for them.

Having reviewed this matter, the Court finds that Plaintiff has established a prima facie case for FMLA retaliation.[2] She was terminated during her FMLA leave, thus showing temporal proximity between the leave and the discharge. Moreover, a reasonable jury could view Bryant's repeated remarks to Plaintiff that it was a bad time to take leave, and her suggestion regarding the anti-hysterectomy book, as additional evidence in favor of Plaintiff's view. As such, the analysis shifts to Defendant's RIF, and whether it can constitute a legitimate non-discriminatory justification for Plaintiff's termination. The Court finds enough factual questions raised in this case regarding the legitimacy of the discipline underlying Plaintiff's RIF score, especially the

---

[2] The Court further finds no real question that Plaintiff has proffered adequate evidence in support of her parallel FMLA interference claim, which requires her to demonstrate 1) she was an eligible employee, 2) she was entitled to leave under the FMLA, 3) she provided adequate notice of her intention to take leave, and 4) Defendant denied her FMLA benefits to which she was entitled. Cavin v. Honda of America Mfg. Inc., 346 F.3d 713, 719 (6th Cir. 2003). A reasonable jury could find the facts that Drew repeatedly told Plaintiff it was not a good time to take leave, and that Defendant refused to take her back after she was able to return to work, as evidence that Plaintiff suffered FMLA interference.

fact that another employee's discipline in the relevant time-period was not considered in the calculation, such that a jury could find the RIF analysis flawed. The Court agrees with Plaintiff that she need not establish that the RIF itself was pretextual, but that a reasonable jury could conclude the underlying disciplinary documents were. Of course, a jury could also conclude the discipline was as a result of Fuller's direction. However, the question of fact as to what motivated the discipline is one for the jury. Accordingly, there are jury questions as to Plaintiff's FMLA claims which preclude summary judgment.

**C. Plaintiff's ERISA Claim**

In addition to her FMLA claims, Plaintiff contends her termination also amounts to a violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. Under such Act, "It shall be unlawful for any person to discharge. . .a participant. . .for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan,. . ." 29 U.S.C. § 1140.

Defendant contends Plaintiff's ERISA claim should fail because in her deposition Plaintiff stated that the employee health benefits referred to in her Complaint only referred to her husband's life insurance policy (doc. 27). Because Defendant has proffered evidence that such life insurance policy remained in full force and effect, it argues the Court should dismiss the ERISA

claim (Id.).

Plaintiff responds that as a layperson she is not required to have the legal knowledge required to establish the basis for an ERISA violation, such that Defendant's attempt to limit such claim to life insurance is not well-grounded. Plaintiff argues the fact of the timing of her termination in relation to her husband's cancer diagnosis could be found to support a theory that interference with health care benefits was at least a motivating factor in the termination. The Court agrees, and denies Defendant's attack of Plaintiff's ERISA claim.

## IV. Conclusion

Taking all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the Court concludes that a reasonable jury could find a sufficient factual basis to support Plaintiff's theory that her termination was the product of unlawful animus toward Family and Medical Leave Act leave. The Court further finds that a jury could find the timing of her termination, within only weeks of the cancer diagnosis of her husband, to evidence Defendant's intent to interfere with health care benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1140. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment (doc. 27), SCHEDULES a final pretrial conference for 11:00 A.M. on July 19,

2012, and SETS the three-day jury trial to commence on August 21, 2012.

SO ORDERED.

Dated: June 20, 2012  /s/ S. Arthur Spiegel
S. Arthur Spiegel
United States Senior District Judge